1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10   KING VISION PAY-PER-VIEW, LTD.,

11            Plaintiff,                    No. CIV S-08-1038 FCD DAD

12       v.

13   ALEX JOHN LAVORICO, et al.,            ORDER AND

14            Defendants.                   FINDINGS & RECOMMENDATIONS

15   _____/

16            This matter came before the court on July 17, 2009, for hearing of plaintiff's

17   motion for default judgment against defendants Ted Villanueva, individually and doing business

18   as Club Coyote, and Club Coyote, LLC.[1]  (Doc. No. 18).  Thomas P. Riley, Esq. appeared

19   telephonically on behalf of plaintiff.  No appearance was made by or for the defendants.

20            Upon hearing argument, the court took plaintiff's motion under submission.  For

21   the reasons set forth below, the undersigned recommends that the motion be granted and that

22   default judgment be entered against the defaulted defendants.

23   /////

24   _____

25        [1]  By stipulation and order filed January 5, 2009, plaintiff's complaint against defendant
     Alex John Lavorico, individually and doing business as Club Coyote, was dismissed.  (Doc. No.
26   13.)  Defendants Ted Villanueva, individually and doing business as Club Coyote, and Club
     Coyote, LLC are therefore the sole remaining defendants in this action.

BACKGROUND

Plaintiff King Vision Pay-Per-View, Ltd. is an international distributor of sports and entertainment programming.  Defendants Ted Villanueva and Club Coyote, LLC operate a food-and-drink establishment called "Club Coyote" in Woodland, California.  By contract, plaintiff paid for and was granted exclusive nationwide television distribution rights to the "Felix 'Tito' Trinidad v. Ronald 'Winky' Wright Championship Fight Program," which was telecast nationwide on Saturday, May 14, 2005, via closed-circuit television.  Defendants intercepted and exhibited the program in Club Coyote without plaintiff's authorization.

Although service of process was effected on defendants Villanueva and Club Coyote, LLC, each of these defendants failed to appear in this action.  On April 8, 2009, plaintiff requested entry of default as to defendant Ted Villanueva, individually and doing business as Club Coyote, and defendant Club Coyote, LLC.  (Doc. No. 16.)  The Clerk entered default against both defendants on April 9, 2009.  (Doc. No. 17.)  On June 4, 2009, plaintiff filed its notice of motion and motion for default judgment with a proof of service reflecting service of the motion on the defaulted defendants.

LEGAL STANDARDS

Federal Rule of Civil Procedure 55(b)(2) governs applications to the court for entry of default judgment.  Upon entry of default, the complaint's factual allegations regarding liability are taken as true, while allegations regarding the amount of damages must be proven.  Dundee Cement Co. v. Howard Pipe & Concrete Prods., 722 F.2d 1319, 1323 (7th Cir. 1983) (citing Pope v. United States, 323 U.S. 1 (1944); Geddes v. United Fin. Group, 559 F.2d 557 (9th Cir. 1977)); see also DirectTV v. Huynh, 503 F.3d 847, 851 (9th Cir. 2007); TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987).

Where damages are liquidated, i.e., capable of ascertainment from definite figures contained in documentary evidence or in detailed affidavits, judgment by default may be entered without a damages hearing.  Dundee, 722 F.2d at 1323; see also Rule 55(b)(2).  Unliquidated and

punitive damages, however, require "proving up" at an evidentiary hearing or through other means.  Dundee, 722 F.2d at 1323-24; see also James v. Frame, 6 F.3d 307, 310-11 (5th Cir. 1993).

Granting or denying default judgment is within the court's sound discretion. Draper v. Coombs, 792 F.2d 915, 924-25 (9th Cir. 1986); Aldabe v. Aldabe, 616 F.2d. 1089, 1092 (9th Cir. 1980).  The court is free to consider a variety of factors in exercising its discretion. Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  Among the factors that may be considered by the court are

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel, 782 F.2d at 1471-72 (citing 6 Moore's Federal Practice ¶ 55-05[2], at 55-24 to 55-26).

## ANALYSIS

I.  Whether Default Judgment Should Be Entered

The factual allegations of plaintiff's complaint, taken as true pursuant to the entry of defaults against defendants Villanueva and Club Coyote, LLC, establish the following circumstances:  (1) defendant Ted Villanueva is an owner, operator, licensee, permitee, person in charge, or person with control over a commercial establishment doing business as Club Coyote in Woodland, California; (2) defendant Club Coyote, LLC is also an owner, operator, licensee, permitee, person in charge, or person with control over the commercial establishment doing business as Club Coyote; (3) by contract, plaintiff paid for and was granted exclusive nationwide television distribution rights to the "Felix 'Tito' Trinidad v. Ronald 'Winky' Wright Championship Fight Program" that took place on May 14, 2005; (4) pursuant to the contract, plaintiff entered into sublicensing agreements with various commercial entities throughout North America by which it granted those entities limited sublicensing rights to exhibit the Trinidad v.

3

1   Wright championship fight to their patrons within their establishments; (5) as a commercial

2   distributor of sporting events, plaintiff expended substantial monies marketing, advertising,

3   promoting, administering, and transmitting the program to its customers; (6) with full knowledge

4   that the program was not to be intercepted, received, and exhibited by unauthorized entities,

5   defendants exhibited the Trinidad v. Wright fight at the time of its transmission and did so

6   willfully and for purposes of commercial or private gain; (7) each defendant violated 47 U.S.C. §

7   605, et seq., which prohibits the unauthorized publication or use of communications; (8) each

8   defendant violated 47 U.S.C. § 553, et seq., which prohibits the unauthorized exhibition,

9   publication, and divulgence of programs; (9) by reason of defendants' violations of §§ 553 and

10  605, plaintiff has a private right of action against them pursuant to both statutes; (10) defendants

11  also tortiously obtained possession of plaintiff's program and wrongfully converted it to their

12  own use and benefit; and (11) by reason of defendants' tortious conversion, plaintiff is entitled to

13  compensatory and punitive damages.  (Doc. No. 1 at 2-6.)

14          In its complaint, plaintiff prays for statutory damages of $100,000.00 for each

15  willful violation of 47 U.S.C. § 605 and for recovery of all costs and reasonable attorney's fees.

16  In addition, plaintiff prays for statutory damages of $50,000.00 for each willful violation of 47

17  U.S.C. § 553 and for recovery of all costs and reasonable attorney's fees.  Plaintiff seeks

18  compensatory damages, reasonable attorney fees, and costs of suit for defendants' tortious

19  conversion of plaintiff's sports program.  (Doc. No. 1 at 7-8.)

20          Plaintiff's complaint and summons were served upon defendant Club Coyote,

21  LLC on March 5, 2009, by substitute service after multiple attempts to effect personal service.

22  The documents were left with a competent member of the household at the residence of Ted

23  Villanueva, the registered agent for service for defendant Club Coyote, LLC.  (Doc. No. 14.)

24  Plaintiff's complaint and summons were also served on defendant Ted Villanueva, individually

25  and doing business as Club Coyote, on that same date by the same means.  (Doc. No. 15.)  The

26  undersigned finds that the defendants were properly served with the complaint and that the Clerk

4

1   of the Court properly entered the default of these defendants on April 9, 2009.  (Doc. No. 17.)

2   Defendants were also served with plaintiff's request for entry of default and plaintiff's

3   application for default judgment by the court.  (Docs. No. 16 and 18.).  Despite being served with

4   process and with all papers filed in connection with plaintiff's request for entry of default and

5   motion for default judgment, defendants have failed to respond to plaintiff's complaint, to

6   plaintiff's request for entry of default, or to plaintiff's motion for default judgment.  Nor did any

7   defendant appear at the hearing on plaintiff's motion for default judgment.  Rather, the

8   defendants have failed to participate in this action in any way.

9          After weighing the Eitel factors, the undersigned finds that the material

10  allegations of the complaint for the most part support plaintiff's claims.[2]  Plaintiff will be

11  prejudiced if default judgment is denied as to these defendants because plaintiff has already

12  litigated claims against defendant Lavorico and entered into a settlement agreement with him.

13  Plaintiff has no other recourse for recovery of the damages suffered due to the failure of the  two

14  remaining defendants to pay for the right to exhibit the Trinidad v. Wright championship fight to

15  the patrons within Club Coyote.

16         In light of the entry of default against the two defendants, there is no apparent

17  possibility of a dispute concerning the material facts underlying the action.  Nor is there any

18  indication that either defendant's default resulted from excusable neglect, as each defendant was

19  properly served with plaintiff's pleadings as well as with plaintiff's request for entry of default

20  and motion for default judgment.  Defendants had ample notice of plaintiff's intent to pursue

21

22         [2]  Some courts have held that a defendant cannot be held liable under both 47 U.S.C. §
    605(a) and 47 U.S.C. § 553.  Kingvision Pay Per View, Ltd., v. Williams, 1 F. Supp. 2d 1481,
23  1484 (S.D. Ga. 1998); J & J Sports Productions, Inc. v. Ro, No. C 09-02860 WHA, 2010 WL
    668065, at *3 (N.D. Cal. Feb. 19, 2010); J & J Sports Productions, Inc. v. Prado, No. 2:07-cv-
24  02104 GEB DAD, 2008 WL 822159, at *3 (E.D. Cal. Mar. 27, 2008).   However, the court need
    not reach the issue in this case, since the overwhelming majority of courts have concluded that
25  where, as here, the defendants have defaulted damages are to be awarded only under § 605.
    Kingvision Pay Per View, Ltd., v. Backman, 102 F. Supp. 2d 1196, 1197, n. 1 (N.D. Cal. 2000)
26  (and cases cited therein).  See also J & J Sports Productions, Inc. v. Betancourt, No. 08cv937 JLS
    (POR), 2009 WL 3416431, at *2 (S.D. Cal. Oct. 20, 2009).

1  judgment against them.

2          Although public policy generally favors the resolution of a case on its merits, each

3  defendant's failure to appear and defend against plaintiff's claims has made a decision on the

4  merits impossible in this case.  Because most of the <u>Eitel</u> factors weigh in plaintiff's favor, the

5  undersigned, while recognizing the public policy favoring decisions on the merits, will

6  recommend that default judgment be entered against the two defaulted defendants, Ted

7  Villanueva, individually and doing business as Club Coyote, and Club Coyote, LLC.

8  II.  <u>Terms of Judgments to Be Entered - Damages</u>

9          After determining that entry of default judgment is warranted, the court must next

10  determine the terms of the judgment.  Upon consideration of all of plaintiff's briefing in support

11  of the motion for default judgment, the undersigned will recommend that damages be awarded

12  only with respect to the violation of 47 U.S.C. § 605 and not in the amount requested by plaintiff

13  with respect to the violation of that statute.

14          By its motion, plaintiff seeks a judgment in the total amount of $100,400.00

15  against the two defaulted defendants.  That sum consists of $50,000.00 in enhanced statutory

16  damages sought by plaintiff for one violation of 47 U.S.C. § 605(e)(3)(B)(iii) and (c)(ii);

17  $50,000.00 in enhanced statutory damages sought for one violation of 47 U.S.C. § 553(b)(2) and

18  (c)(2)(e)[3]; and $400.00 sought for the tort of conversion.  (Doc. No. 18, Decl. of Thomas P. Riley

19  at 2.)  The undersigned is mindful that the defendants were served with plaintiff's motion for

20  default judgment and were placed on notice of the amount in damages sought by plaintiff.

21  However, granting or denying default judgment is within the court's sound discretion, and one of

22  the factors the court is free to consider in exercising its discretion is the sum of money at stake.

23  <u>See J & J Sports Productions, Inc. v. Betancourt</u>, No. 08cv937 JLS (POR), 2009 WL 3416431, at

24  *3 (S.D. Cal. Oct. 20, 2009).

25  _____

26          [3] As noted above, the court will not recommend that damages be awarded with respect to
a violation of  47 U.S.C. § 553

1    Under the Federal Communications Act, a plaintiff may elect to seek either actual

2    or statutory damages. 47 U.S.C. § 605(e)(3)(C)(i)(I & II). Here, plaintiff seeks $50,000.00 in

3    enhanced statutory damages. The statute provides for statutory damages for each violation of not

4    less then $1,000 and not more than $10,000, as the court considers just. 47 U.S.C. §

5    605(e)(3)(C)(i) (II). Moreover, the statute authorizes enhanced damages of not more than

6    $100,000 if the court finds the violation was "committed willfully and for purpose of direct or

7    indirect commercial advantage or private financial gain." 47 U.S.C. § 605(e)(3)(C)(ii). While

8    acknowledging that the amount of enhanced statutory damages it seeks here is "unconventional, "

9    plaintiff argues that the requested amount is justified primarily because of the need to deter

10   broadcast piracy in light of the harm done to plaintiff's business as a result of such activities.

11   The court finds plaintiff's argument in this regard to be unpersuasive and not supported by the

12   weight of authority in this area.

13   In this case, plaintiff's investigator stated that while the establishment in question

14   had a seating capacity of approximately one hundred, during the Trinidad/Wright fight broadcast,

15   she observed only between twelve and twenty-six patrons inside the bar during the investigator's

16   three separate head counts. The investigator also reported that there was no cover charge for

17   entry on the night in question. There is no evidence before the court of any promotion by

18   defendants that the fight would be shown at the establishment nor that a special premium on food

19   and drink was being charged on the night of the fight. While it appears that the establishment in

20   question was a sports bar and grill with ten televisions of various sizes, there is no evidence that

21   it was doing any greater level of business on the night the fight was shown than at any other time.

22   Finally, plaintiff has presented no evidence to the court suggesting that the defendants were

23   repeat broadcast piracy offenders.

24   In light of this record, the court will recommend that judgment be entered against

25   the defaulted defendants and that plaintiff be awarded $1,000 in statutory damages plus $5,000 in

26   enhanced statutory damages for a total of $6,000 in damages pursuant to 47 U.S.C. §

605(e)(3)(C)(i & ii).  <u>See</u> <u>J & J Sports Productions, Inc. v. Betancourt,</u>, 2009 WL 3416431, at *4 (awarding statutory damages of $2,000 and tripling the base award for a penalty enhancement to a total award of $6,000 in a default judgment under similar circumstances to those presented here); <u>J & J Sports Productions, Inc. v. Medinarious, et al.,</u> No. C 08-0998 JF (RS), 2008 WL 4412240, at *3 (N.D. Cal. Sept. 25, 2008) (awarding $1,000 in statutory damages and $5,000 in enhanced statutory damages in a default judgment under similar circumstances); <u>Garden City Boxing Club, Inc. v. Zavala</u>, C-07-5925, 2008 WL 3875272, at *1 (N.D. Cal. Aug. 18, 2008) (same); <u>Garden City Boxing Club, Inc. v. Lan Thu Tran</u>, C-05-5017, 2006 WL 2691431, at *2 (N.D. Cal. Sept. 20, 2006) (same); <u>see</u> <u>also</u> <u>Kingvision Pay Per View, Ltd., v. Backman</u>, 102 F. Supp. 2d 1196, 1197 n.1 (N.D. Cal. 2000) (awarding statutory damages of $1,000 with no enhanced damages under circumstances similar to those here); <u>J & J Sports Productions, Inc. v. Ro</u>, No. C 09-02860 WHA, 2010 WL 668065, at *3-4 (N.D. Cal. Feb. 19, 2010) (awarding $250 in statutory damages and denying request for enhanced statutory damages in light of the lack of evidence that the violation was egregious); <u>J & J Sports Productions, Inc. v. Montecinos</u>, No. C 09-02604 JSW, 2010 WL 144817, at *5-7 (N.D. Cal. Jan. 11, 2010) (granting $5,000 in statutory damages and $10,000 in enhanced statutory damages as part of default judgment where plaintiff presented evidence that defendants were "multiple offenders" who had engaged in "persistent theft" of such pay-per-view broadcasts); <u>J & J Sports Productions, Inc. v. Ferreyra</u>, No. C 08-128 LKK KJM, 2008 WL 4104315, at *1 (E.D. Cal. Aug. 28, 2008) (recommending $100,000 in enhanced statutory damages in light of defendant's prior acts of commercial signal piracy).

   In his declaration in support of the motion for default judgment, counsel indicates that plaintiff also seeks the award of $400 in damages for the state law tort of conversion. Plaintiff would arguably be entitled to such an award.  <u>See</u> <u>J & J Sports Productions, Inc. v. Ro</u>, 2010 WL 668065, at *4; <u>J & J Sports Productions, Inc. v. Montecinos</u>, 2010 WL 144817, at *7; <u>but</u> <u>see</u> <u>J & J Sports Productions, Inc. v. Ferreyra</u>, 2008 WL 4104315, at *1 ("Inasmuch as plaintiff seeks statutory damages rather than actual damages, plaintiff's request for damages for

conversion should be denied."). However, in moving for default judgment plaintiff has failed to submit any evidence in this case of the amount damages suffered as a result of defendants' conversion.[4] Therefore, the court will decline to recommend the award of damages with respect to the tort of conversion.

Finally, although the prayer for relief in plaintiff's complaint seeks costs and attorney fees, the motion for default judgment does not contain such a request. Moreover, no evidence of costs or attorney fees incurred was submitted to the court in connection with the pending motion.

<u>CONCLUSION</u>

IT IS ORDERED that within five days after these findings and recommendations are filed, plaintiff shall serve a copy of the findings and recommendations on each defaulted defendant by mail at the address where service of process was effected, or at any more recent address known to plaintiff, and shall file a proof of such service forthwith.

For the reasons set forth above, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's June 4, 2009 motion for default judgment (Doc. No. 18) against defendants Ted Villanueva, individually and doing business as Club Coyote, and Club Coyote LLC be granted;

2. Judgment be entered against the defendants in the sum of $6,000, consisting of $1,000 in statutory damages plus $5,000 in enhanced statutory damages for violating 47 U.S.C. § 605; $0 for violating 47 U.S.C. 553; and $0 for the tort of conversion; and

3. This case be closed.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within

---

[4] Such damages might be calculated by establishing the amount that defendants would have been required to pay for a proper sublicensing agreement. See <u>J & J Sports Productions, Inc. v. Ro</u>, 2010 WL 668065, at *4

fourteen (14) days after these findings and recommendations are filed, any party may file written objections with the court.  A document containing objections should be titled "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may, under certain circumstances, waive the right to appeal the District Court's order.  <u>See</u> <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: March 5, 2010.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:kw
Ddad1\orders.civil\kingvision1038.oah.071709.mdj